# THE LAW OFFICE OF HARLEY D. BREITE
562 Black Oak Ridge Road
Wayne, N.J. 07470

Phone- 973-872-0604
Member - N.Y., N.J., PA & DC Bar

Fax- 973-860-4602
LL.M. (Master of Laws) in Trial Advocacy

February 18, 2024

Hon. Amit P. Mehta
United States District Judge
United States District Courthouse
333 Constitution Avenue NW
Washington, D.C. 20001


2/28/24
LET THIS BE FILED

Re: United States of America vs. James Breheny
    Docket No.: 0090 1:23CR00179-001(APM)

## DEFENDANT'S SENTENCING MEMORANDUM

Dear Judge Mehta,

    I respectfully request that Your Honor consider this submission on behalf of my client, James Breheny, in connection with his Sentencing Hearing scheduled for Friday, February 23, 2024 at 10:00 am.

    For the reasons set forth herein, the Defense requests that the Court sentence James Breheny in accordance with the Government's request in the Government Sentencing Memorandum (GSM) that my client serve three years of probation, with the special conditions that he serve the first six months of probation on home confinement, perform 120 hours of community service, pay $2,000 in restitution, and pay the mandatory $100 special assessment.

    Most specifically, I respectfully request that Your Honor permit my client to leave his home for the sole purposes of maintaining his employment and attaining church services. As noted on page 21 of the Presentence Investigation Report (PIR), Mr. Breheny has been steadily employed as a full-time mechanic at Airtech in Rutherford, New Jersey, approximately fifteen-minutes from his home. From January 8, 2022 to June 30, 2023, my client also worked part-time at AutoZone in Little Ferry, New Jersey, the same town in which he lives. My client expects to resume work at AutoZone in March 2024 on Tuesday and Thursday from 5:00 pm to 9:00 pm. I ask Your Honor to conclude that no legitimate interest of justice could be served by removing Mr. Breheny's sole source of income and thus compounding the difficulties he must already face as a result of his actions and the Court's sentence. Since 1985, Mr. Breheny has maintained continuous employment evincing a commitment to honoring his responsibilities. The Court should have no reticence in permitting Mr. Breheny to maintain his employment given his history of fulfilling his occupational obligations. The security and self-

1

esteem accumulated by those who work benefits not only themselves and those around them (my client lives with Julie Garrido, his girlfriend of thirteen-years), but also, society as a whole through the example it sets forth to others.

## PROCEDURAL HISTORY

On May 19, 2023, The United States Attorney for the District of Columbia files a one-count Information charging James Breheny with Obstruction of an Official Proceeding and Aiding and Abetting in violation of Title 18, U.S.C., Section 1512(c)(2) and 2). The criminal conduct charged in the Information occurred on or about January 6, 2021 and is part of what has come to be commonly referred to as the "Capitol Riot Cases".

On May 20, 2021, the Defendant was placed on a $50,000.00 unsecured bond in the District of New Jersey. At his initial appearance in the District of Columbia on June 3, 2021, he was placed on personal recognizance with pretrial supervision. As conditions of release, the Defendant was ordered to report for supervision in the District of New Jersey, stay away from Washington, DC except for attendance at court hearings, meetings with counsel, or required for pretrial services, travel outside of the continental U.S. requires approval from the Court, and not to possess a firearm. Obviously, the Defendant was permitted to work.

Pretrial Services Agency of the District of Columbia (PSADC) records and the Defendant's supervising pretrial services officer in the District of New Jersey indicate that the Defendant has complied with all Court ordered conditions of release. In almost three years, there has not been a single infraction on the part of Mr. Breheny with regard to any of his obligations to both the Court and the Pretrial Services Agency. This unblemished history of meeting his obligations should eviscerate any concerns the Court may have in considering to keep Mr. Breheny present at his occupation.

On August 6, 2021, the Defendant pled guilty to the Information charging Obstruction of an Official Proceeding and Aiding and Abetting in violation of Title 18, U.S.C., Section 1512(c)(2) and 2).

The Presentence Investigation Report produces a United States Sentencing Guidelines ("Guidelines") totaled adjusted offense level of 14 for 18 U.S.C. Section 1512(c)(2) and 2). This took into account a two-level downward adjustment, pursuant to USSG Section 4C1.1 to which the Government takes exception. The U.S. Probation Office, the Government and the Defense agree that the Defendant's criminal history is Category 1. Given the Defendant's total adjusted offense level of 14, including the Defendant's acceptance of responsibility, the Guidelines suggest a custodial sentence ranging from 15 to 21 months. The Plea Agreement calls for an agreement on the calculation of this range but permits the Defense to argue for a downward variance based upon the factors set forth in 18 U.S.C. Section 3553(a). The Defense notes again that the Government is not seeking a custodial sentence.

2

### A. Nature and Circumstances of the Offense

The January 6, 2021 attack on the U.S. Capitol was inarguably a criminal manifestation of the political divide of the United States of America. However, the Defense respectfully disagrees with the Government's assertion that, as a criminal offense, "It is hard to imagine a more significant interference with the administration of justice that[n] the January 6 attack on the Capitol" (GSM, p.10). This country, founded upon the principles that a corrupt government is no government at all, stands for the premise that the citizenry is ultimately entrusted to ensure that democracy prevails. The American Revolution was just that and through this country's entire history, political demonstration, often violent in nature, has marked important epochs in the growth of this country. And while that in no way is meant to condone the actions of my client on January 6, 2021, there is however, a long history of recognizing the need for forgiveness towards those who transgress the law while protesting federal authority. It was then President George Washington himself who pardoned the only two men found guilty of treason in The Whiskey Rebellion of 1794.

The Government's Sentencing Memorandum, in suggesting a fair and just sentence. I will attempt to address some of the more salient issues in anticipation of the Government's argument during the Sentencing.

### 1) **When and How the Defendant Entered the Capitol Building**:

The Defendant quickly accepted responsibility for his actions and fully admitted that he did, in fact, enter the Capitol. As to the issue of when he breached the Capitol, he certainly was not the first person to do so. The Defendant walked right in, with others, without harming a single person. I would ask the Court to consider that the Defendant was not part of any action that kicked open doors or shattered windows in order to gain entry.

The Defendant never scaled any scaffolding. The Defendant never threw anything at anyone nor did he inflict any physical harm onto another during that entire day.

The Government notes in their Memorandum that the Defendant "did not actively participate in the Oath Keepers' planning and coordination for the attack on the Capitol" (GSM, p. 2). In fact, the Government goes on to note that Mr. Breheny was only added to an Oath Keepers' encrypted group chat for the January 6th operation on the very morning of January 6th (GSM, p. 2). This is, in part, why the Government did not charge Mr. Breheny with participating in a conspiracy with the Oath Keepers.

The Court may also consider that the Defendant did not go to the Capitol bearing any weapon whatsoever. The Defendant never made any attempt to secure any weapon of any kind. This clearly demonstrates that when Mr. Breheny left New Jersey that same morning for Washington, D.C., he had no intent to commit violence upon any person.

Chief Judge Howell enumerated specific considerations to differentiate the severity of the behavior amongst the hundreds of defendants affiliated with the January 6, 2021 events at the Capitol. See United States v. Chrestman, - - F.

Supp. 3d – 2021 WL 765662, at *7 (D.D.C. Feb 26, 2021) (Howell, C.J.). The second of those considerations is whether the defendant "engaged in prior planning before arriving at the Capitol." Here, it is clear that Mr. Breheny arrived at the Capitol without any members of the Oath Keepers, unarmed, and without any premeditation to commit any violence.

### 2) Whether the Defendant Engaged In Violence or Incited Violence:
The Government does not dispute that Mr. Breheny did not engage in violence nor did he incite any violence.

### 3) Whether the Defendant Engaged in Any Acts of Destruction:
The Defendant did not engage in any acts of destruction.

### 4) The Defendant's Reaction To Acts of Violence or Destruction:
Here, there is no need to engage in speculation. Within a week after the incident, Mr. Breheny voluntarily spoke to law enforcement agencies and expressed his remorse that things went so awry and people were harmed. Mr. Breheny never once even implied that his political ideology could somehow justify the actions taken that day. Mr. Breheny recognized that innocent people were seriously injured and more important than which lever one pulls inside a voting booth is the attention we should now pay in assessing just how far one can assemble, speak out, and actually act out. What a person believes or actually says is very often quite different from what a person does or is even willing to do. This was clearly the case with Mr. Breheny.

### 5) The Length of the Defendant's Time Inside the Building and Exactly Where He Traveled:
As the Government refers, Mr. Breheny "was inside the Capitol for only five to six minutes and did not directly harm or seek to harm any officers or property during this offense" (GSM, p. 2). Video clearly shows that Mr. Breheny was not roaming around attempting to encounter any elected officials or cause any physical harm to persons or property. In fact, he ignored the crowd, turned back and exited against the surging mass of protestors. Like so many misguided persons today, his first inclination was to take a photograph of himself and publish it on the social media network, Facebook. Very soon after that, Mr. Breheny turned and calmly walked out of the Capitol.

### 6) The Defendant's Statements In Person or On Social Media:
The Government raises a very sensitive issue in asking this Court to punish the Defendant for unpopular speech. This is not the time nor place to exhaustively argue the First Amendment. The Defense asks Your Honor to ignore excited and exaggerated boasts and political positions expressed by Mr. Breheny. Mr. Breheny sent messages to persons whom he knew exclaiming that he had "breached the Capitol door". What the Defendant may have said or displayed on social media neither harmed anyone or amounted to a crime so it should not be given any weight in the Court's decision in sentencing the Defendant.

4

**7) Whether Defendant Cooperated With or Ignored Law Enforcement:**

Without doubt, as referenced throughout the Government's Sentencing Memorandum, Mr. Breheny not only quickly, but also, extensively, cooperated with law enforcement. Perhaps this is an appropriate place to acknowledge that Assistant United States Attorney Louis Manzo has been one of the most decent, honest, and transparent prosecutors with whom I have ever dealt during my 31 years as an attorney. Recognizing the enormous risks and sacrifices made by Mr. Breheny, it was AUSA Mano who sought and fought for a compassionate resolution for this case. The public should be made aware that regardless of which side they fall on in terms of political belief, they can be sure that the Government and the Court, through this and the other two Capitol Riot Cases in which I have been involved, have done nothing but elevate the status and integrity of our criminal justice system.

**9) Whether the Defendant Exhibited Evidence of Remorse or Contrition:**

Mr. Breheny, in all his interactions with all those who were part of this case has explicitly demonstrated remorse. The remorse expressed by Mr. Breheny was unquestionably sincere. He expressed the tremendous shame he brought onto himself and his family. In response to a very specific question posed by law enforcement, Mr. Breheny earnestly expressed that he did, in fact, feel as if he had been duped by members of the Oath Keepers prior and up to January 6, 2021. It is important to recognize that Mr. Breheny was not transferring any blame or responsibility onto others, but rather, honestly answering the question put to him by the Government. Just as it should not be difficult for anyone today to believe that a person could be informationally- manipulated by former group members or media outlets, it should also not be difficult to believe that such a person can undergo a change of heart in their belief systems. The actions of himself and others stand in absolute and stark contrast to Mr. Breheny's lifelong commitment to leading a law-abiding life and remaining true to the values and words of the United States Constitution. Epiphanies are rare but it certainly didn't take Mr. Breheny long to realize that his previous line of thinking was incorrect. He officially left the Oath Keepers years before January 6, 2021 but was unfortunately cajoled back by the promise of better things to come and in a lawful manner. When it became patently clear that this was not their true course, It certainly didn't take Mr. Breheny long to feel remorse and regret. Just as all people mourn differently, those who come to see and actually feel the error of their way don't all do so in the same manner or with the same rapidity. There are in fact, limits to any government's omnipotence and it may begin with not being able to absolutely know the minds and hearts of its citizens, despite some suggestive and conflicting outward appearances.

**B.**     **Defendant's Background**

In assessing Mr. Breheny's history and characteristics for purposes of sentencing, the Court could look at some of the previously established criteria found in the Presentence Investigation Report. The Court, under its own discretion, consider the Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings." 18 U.S.C. Section 3142(g)(3)(A).

James Breheny is 64 years old and has lived in New Jersey practically his entire life. His father was a retired Captain with the Army National Guard. Mr. Breheny recounts a "normal" and "typical" upbringing along with his five siblings with whom he remains close. Mr. Breheny is divorced with no offspring. The Defendant has a long and continuous history of volunteer working stretching from within his own town to traveling back and forth the entire country to victims of hurricanes, floods, and other natural disaster. Mr. Breheny used his radio communications expertise to teach others how to communicate during crisis and times of emergency.

On or around 2014, Mr. Breheny joined the Oath Keepers and was one of five members in all of New Jersey. His purpose was to work with ex-military members and former law enforcement officers to help those in need. Two years prior to the Capitol Riot, Mr. Breheny terminated his affiliation with the Oath Keepers and refused to pay any membership dues. Prior to January 6, 2021, the Defendant, upon receiving a phone call from Stewart Rhodes, refused his invitation to serve and solicit members for security detail.

The Defendant has never suffered from, or been treated for any mental or emotional health problems. He has never sought the professional assistance of a counselor, psychologist, or psychiatrist. While the Defendant admitted to a prior drug and alcohol issue, he has remained both alcohol and drug free for approximately thirty-years. Mr. Breheny attended Pennco Tech in Bristol, Pennsylvania and earned an Associate of Arts & Sciences Degree in the field of Electronic Engineering Technology.

From December 1977 to November 1987, the Defendant was a member of the U.S. Air Force Reserves. He specialized in Avionic Inertial Navigation and Radar and earned the rank of Staff Sergeant. Mr. Breheny also received an Air Force Achievement Medal and a Meritorious Service Medal. From 1987 to 1990, Mr. Breheny was a member of the Army National Guard.

Mr. Breheny, as thoroughly detailed in the Presentence Investigation Report has maintained continuous employment. In fact, Mr. Breheny is scheduled to begin a second job demonstrating his commitment to returning to the status of being productive member of society.

Mr. Breheny poses no threat to anyone or the community. He has demonstrated sincere remorse as well as a willingness to become part of the remedy to the problems that contributed to the events of January 6, 2021.

If the Defendant were to receive a non-custodial sentence, he could continue to work and maintain his relationship with his live-in girlfriend. In addition, Mr. Breheny could continue some of the charity work in which he was involved prior to his arrest. The Court may note that since the time I met Mr. Breheny, he has become a regular volunteer at the bi-monthly Harley's Kids Party of which I have created and managed for the past thirty-years. Mr. Breheny serves pizza and soda to mentally and physically challenged persons and interacts with them on a personal level. I have witnessed this every two months since meeting Mr. Breheny.

It is clear that Mr. Breheny is not a danger to the community. Mr. Breheny has most definitely learned the error of his ways and understands what led him to make such poor decisions surrounding the events of January 6, 2021. He is sincerely remorseful and will never repeat the crime to which he pled guilty. Mr. Breheny has a family to which he has demonstrated that he is intent on remaining a law-abiding and productive member of society. I have provided several letters attesting to Mr. Breheny's commitment to helping those facing dire situations as well as his character. I respectfully ask the Court to consider those letters along with this submission

Based upon the factors and arguments set forth above, Mr. Breheny most respectfully implores the Court to sentence him to a probationary term with six months of home confinement that would permit him to work.

Respectfully submitted,

Harley D. Breite, Esq.

Case 1:23-cr-00179-APM   Document 71   Filed 02/28/24   Page 8 of 8